

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 30, 2018

Via Email
The Honorable Edwin G. Torres
United States Magistrate Judge
Southern District of Florida
Miami, Florida 33132
Email: torres@flsd.uscourts.gov

    Re:   *United States v. Cesar Altieri Sayoc*,
           18 Mag. 3581 (S.D. Fla.), 18 Mag. 9159 (S.D.N.Y.)

Dear Judge Torres:

      The Government respectfully submits this letter in advance of the proceeding scheduled for November 2, 2018 at 10:00 a.m.  The defendant conducted a domestic terrorist attack targeting at least 15 victims with improvised explosive devices ("IEDs") that he sent to locations throughout the country in padded mailing envelopes.  One of the IEDs was intercepted in the mail yesterday, days after the defendant's arrest and around the same time as his first court appearance before Your Honor.  While analysis of the IEDs by the Federal Bureau of Investigation ("FBI") remains ongoing, it is clear that many of the devices contained energetic material with explosive qualities, and several of the devices also contained shards of glass that could only have been intended to maximize harm to the defendant's victims.

      The defendant is currently charged with five serious crimes in the Complaint that is attached as Exhibit A, and he faces a maximum sentence of 48 years' imprisonment.  The FBI has already recovered electronic devices from the defendant that contain documents with the victim addresses to which the defendant mailed the IEDs as well as Internet searches related to his targets.  Metadata from the electronic devices indicates that the defendant started planning the attack as early as July 2018.  DNA and other forensic evidence from the IEDs further establishes the defendant's identity as the perpetrator.  And as law enforcement continues to investigate, the defendant is likely to face additional charges and increased penalties.  Under these circumstances, the defendant should be detained pending trial, and there can be no serious question as to his identity under Federal Rule of Criminal Procedure 5(c)(3)(D)(ii).  Accordingly, the Government respectfully requests that following Friday's proceeding, the Court transfer the defendant to the Southern District of New York to face the consequences of his actions.

**I.     The Defendant Should Be Detained Pending Trial**

There are no conditions that could adequately protect the public from the defendant and assure his appearance in Manhattan for trial. Accordingly, the Bail Reform Act requires the defendant's detention due to both his dangerousness to the community and risk of flight.

**A.  Applicable Law**

"The Bail Reform Act provides that a court 'shall order the pretrial release of the person' unless it determines 'that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Clum*, 492 F. App'x 81, 84 (11th Cir. 2012) (quoting 18 U.S.C. § 3142(b)). The Government meets its burden on dangerousness by proffering clear and convincing evidence. *See* 18 U.S.C. § 3142(f). Flight risk may be established by a preponderance of the evidence. *See Clum*, 492 F. App'x at 85. "Either ground may support an order of detention." *Id.*

In determining whether the defendant poses a flight risk, a court must consider several factors, including (1) the "nature and circumstances" of the charged offense, (2) the weight of the evidence against the defendant, and (3) the defendant's history and characteristics, including his character, his family and community ties, his past conduct, his criminal history, and his "record concerning appearance at court proceedings."

*Id.* (quoting 18 U.S.C. § 3142(g)).

**B.  Discussion**

Substantially all considerations relevant to bail support the imposition of an order of detention on the bases of the defendant's dangerousness and flight risk.

**1.  Nature and Circumstances of the Offenses**

The defendant mailed at least 15 IEDs to intended victims that included current and former politicians and private citizens.[1] The Complaint describes 13 of those devices. On the day the

---

[1] To date, law enforcement personnel have intercepted packages addressed to George Soros, former Secretary of State Hillary Clinton, former CIA Director John Brennan, former President Barack Obama, Representative Maxine Walters (separate packages mailed to Washington, D.C. and Los Angeles, California), former Attorney General Eric Holder, former Vice President Joseph Biden (separate packages to two addresses in Delaware), Robert De Niro, Senator Cory Booker, former Director of National Intelligence James Clapper, Senator Kamala Harris, Thomas Steyer, and CNN in Atlanta. The last two mailings were intercepted after the filing of the Complaint charging the defendant.

FBI arrested the defendant, law enforcement intercepted a 14th IED that the defendant had mailed to Thomas Steyer in San Francisco, California. Just yesterday, on the same day as the defendant's initial appearance before Your Honor, law enforcement intercepted another of the defendant's IED-laden packages before it reached its intended target at CNN in Atlanta, Georgia.

The FBI's analysis of the defendant's IEDs is ongoing, but it is clear that they were dangerous. The IEDs that have been analyzed thus far contained energetic material with explosive qualities. (*See* Compl. ¶ 8(b) & n.1).[2] The defendant also placed shards of glass in several of the IEDs for the apparent purpose of maximizing harm to his intended victims through the detonation of the devices that he had mailed.

As a result of this brazen course of conduct, the defendant is currently charged with five crimes. Count One charges the defendant with interstate transportation of an explosive, in violation of 18 U.S.C. § 844(d), which carries a maximum term of imprisonment of 10 years. Count Two charges the defendant with illegally mailing explosives, in violation of 18 U.S.C. § 1716(j)(2), which carries a maximum term of imprisonment of 20 years. Count Three charges the defendant with conveying threats against an immediate family member of a former President, in violation of 18 U.S.C. § 879(a), which carries a maximum term of imprisonment of five years. Count Four charges the defendant with conveying threats in interstate commerce, in violation of 18 U.S.C. § 875(c), which carries a maximum term of imprisonment of five years. Count Five charges the defendant with assaulting a former federal official, in violation of 18 U.S.C. § 111(a)(2), which carries a maximum term of imprisonment of eight years. The FBI's investigation is ongoing, and the Government is in the process of evaluating additional evidence, which may warrant further criminal charges. However, the seriousness of the existing charges, as well as of the underlying conduct, strongly support the imposition of a detention order.

   2. **The Weight of the Evidence**

The evidence of the defendant's terror campaign is still being collected but is already overwhelming. Because of the powerful proof that the defendant perpetrated these acts, he poses a substantial danger to the community. In light of the consequences at issue and the likelihood of conviction, the defendant is also a substantial flight risk. Therefore, pretrial detention is appropriate. Set forth below are examples of some of the evidence law enforcement has collected since the investigation began last week.

The FBI arrested the defendant on October 26, 2018, in the vicinity of a white van that he appears to have been living in at the time of his arrest (the "Sayoc Van"). The Sayoc Van bears stickers that depict some of the defendant's intended victims labeled with red crosshairs, such as former President Obama and former Secretary of State Hillary Clinton.

---

[2] Some of the devices are either in transit, or have only recently arrived, at the FBI's laboratory in Quantico, Virginia.

The FBI also seized multiple electronic devices from the Sayoc Van, including a laptop (the "Sayoc Laptop"), which were searched pursuant to warrants issued in the Southern District of New York.  The Sayoc Laptop contains lists of physical addresses that match the labels on the IED packages that the defendant mailed, which are saved at a file path on the computer that includes a variant of the defendant's first name:  "Users/Ceasar/Documents."  A document from that path, titled "Debbie W.docx" and bearing a creation date of July 26, 2018, contains repeated copies of the return address in "Sunrise, Florida" that the defendant used on the packages and the name "Debbie W. Schultz."  Similar documents bearing file titles that include the name "Debbie" and creation dates of September 22, 2018, contain exact matches of the return address used by the defendant, including (i) the misspelling of Schultz's name as "Debbie Wasserman Shultz," (ii) an address in "Sunrise, Florids [sic]," and (iii) what appears to be the same typeface, font, and font size.  Other files on the Sayoc Laptop, which also have metadata reflecting creation dates of September 22, 2018, contain text that served as the mailing labels for the addresses of the intended victims to whom the defendant mailed IEDs before his arrest.  Documents from the Sayoc Laptop also reflect addresses for numerous additional targets.[3]  Put simply, only the defendant's arrest and incapacitation resulting from his detention were sufficient to stop his attack.

Forensic evidence from the Sayoc Laptop also indicates that the defendant used that computer to conduct research on his targets.  On or about September 18, 2018, the defendant visited a website the address of which included the text "vice-president-joe-bidens-house-former/view," and he also conducted the following Internet searches, among others, related to some of his targets:

- "cnn building"
- "george soros and family"
- "hilary clinton and family"
- "james clapper wife and kids"
- "eric holder wife and kids"
- "john brennan wife and kids"

The defendant possessed a cellphone at the time of his arrest (the "Sayoc Phone"), which the FBI is also searching.  Thus far, the search has revealed that the defendant used the phone to conduct the following Internet searches, among others, on the dates indicated:

- July 15, 2018: "hilary Clinton hime address"
- July 26, 2018: "address Debbie wauserman Shultz"
- September 19, 2018: "address kamila harrias"
- September 26, 2018: "address for barack Obama"

---

[3] The FBI is warning each individual who appears based on evidence collected during the investigation to have been identified by the defendant as a potential target, and will continue to do so if additional names are identified in other evidence.

- September 26, 2018: "michelle obama mailing address"
- September 26, 2018: "joseph biden jr"
- October 1, 2018: "address cory booker new jersey"
- October 20, 2018: "tom steyers mailing address"
- October 23, 2018: "address kamala harris"

The Sayoc Phone also contains photographs of some of the defendant's intended victims, including George Soros, and pictures that appear to have been downloaded from the Internet and purport to be the home of former President Obama, the home of former Vice President Biden, and a driver's license belonging to former First Lady Michelle Obama that includes another address.

The U.S. Postal Inspection Service ("USPIS") has thus far concluded that 14 of the defendant's IED mailings were routed through a postal facility that services the area where the defendant resided prior to his arrest,[4] and the forensic evidence connecting the defendant to these devices is mounting. To date, the FBI has identified possible DNA associations between a DNA sample collected from the defendant prior to his arrest and DNA found on components from 10 of the IEDs, and latent fingerprints on two of the mailing envelopes have been identified to the defendant.

Based on this and other evidence, the Government will establish that the defendant mailed IEDs to at least 15 intended victims with intent to harm them and those in their proximity. Thus, like the seriousness of the charges, the strength of the evidence supports the imposition of an order of detention as to the defendant.

### 3. The Defendant's Personal History and Characteristics

The defendant's personal history and characteristics also support an order of detention.

The defendant has limited ties to the Southern District of Florida. Although he has relatives in the Miami area, he informed law enforcement following his arrest that he was estranged from his mother and living out of the Sayoc Van. More importantly, the defendant appears to have no ties to the Southern District of New York, where he will be prosecuted. *See, e.g.*, *United States v. Rivera*, 90 F. Supp. 2d 1338, 1343 (S.D. Fla. Mar. 10, 2010) ("The relevant community is, of course, the community in which the defendant faces prosecution. In the federal system, courts look to the ties of a defendant to the judicial district in which the criminal charges have been brought."). As a result of the defendant's living circumstances and lack of ties to the New York City area, he poses a significant risk of flight.

The defendant's criminal history underscores his dangerousness and flight risk. According to a criminal complaint, in August 2002 the defendant contacted an employee of Florida Power &

---

[4] USPIS's review is ongoing, and has only just begun with respect to the package that was intercepted yesterday.

Light ("FPL"), threatened to "blow up FPL" in a manner that "'would be worse than September 11th,'" and "threatened that something would happen" to the FPL employee if his utility services were terminated by FPL. (*See* Ex. B at 1). The defendant subsequently pleaded guilty to threatening to throw a destructive device in the second degree, in violation of Florida Statutes, Section 790.162. (*Id.* at 5). In December 2002, the defendant was sentenced to one year of probation. (*Id.* at 6). The defendant subsequently committed several crimes that are minor relative to the charges he now faces. He was repeatedly sentenced to terms of probation, and he appears to have violated the terms of his probation at least twice in 2015.

The defendant's previous felony conviction for a crime of violence serves as additional evidence of his dangerousness. Moreover, when viewed in aggregate, the defendant's criminal history evinces a lack of respect for court orders and suggests that he would not abide by conditions of pretrial release. Finally, previous lenient sentences were insufficient to deter the defendant, and he has never faced the type of sentencing consequences at issue in this case, which creates still greater incentives for him to flee.

*    *    *

Therefore, for all of these reasons, the defendant poses a substantial danger to the community and a significant risk of flight. Accordingly, he should be detained pending trial.

II.    **The Defendant Is the Person Charged in the Complaint**

In light of the evidence set forth above, there can be no serious question as to the defendant's identity. "The sole purpose" of an identity hearing "is to determine whether the person arrested is the person wanted in the other district." *United States v. Asencio*, No. 17 Mag. 6190, 2017 WL 4005636, at *2 (S.D.N.Y. Sept. 12, 2017) (quoting *United States v. Saldana-Beltran*, 37 F. Supp. 3d 1180, 1183-85 (S.D. Cal. 2014)). "It is not a merits hearing," and Government need only establish identity based on probable cause. *Id.* (citing *United States v. Antoine*, 796 F. Supp. 2d 417, 419-20 (E.D.N.Y. 2011), *United States v. Rodriguez-Torres*, No. 14 Mag. 1095, 2014 WL 2320081, at *2 (S.D.N.Y. May 30, 2014)).

Honorable Edwin G. Torres  Page 7
October 30, 2018

      The Complaint charges "Cesar Altieri Sayoc" in five counts.  The defendant in custody has acknowledged that his name is the one in the document.  The FBI has preliminarily identified associations between forensic evidence on most of the IEDs described in the Complaint and DNA and fingerprint samples from the defendant.  And electronic devices seized from the defendant further demonstrate that he is the one who carried out the attack.  This evidence is sufficient to warrant transfer to the Southern District of New York under Rule 5(c)(3)(D)(ii).

                                                        Respectfully submitted,

                                                        GEOFFREY S. BERMAN
                                                        United States Attorney

                                      By:                /s/
                                                 Sam Adelsberg
                                                 Emil J. Bove III
                                                 Jane Kim
                                                 Jason A. Richman
                                                 Assistant United States Attorneys
                                                 (212) 637- 2444

Enclosures

Cc:     Defense Counsel
          (Via Email)